**In re Ricky Lee PORTER, Jr., Debtor.**

**The Oakwood Deposit Bank, Plaintiff,**

**v.**

**Ricky Lee Porter, Jr., Defendant.**

**Nos. 99–3133, 99–31214.**

United States Bankruptcy Court,
N.D. Ohio.

Oct. 25, 2000.

David A. Hyman, Paulding, OH, for plaintiff.

Randy L. Reeves, Lima, OH, for defendant.

### *DECISION AND ORDER*

RICHARD L. SPEER, Chief Judge.

In the instant case, the Plaintiff, through its Amended Complaint, seeks to have an obligation owed to it by the Defendant determined nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). This section provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive[.]

In order to prevail on a complaint brought under § 523(a)(2)(B), a plaintiff must establish the above elements by a preponderance of the evidence. *Gertsch v. Johnson & Johnson Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 167 (9th Cir. BAP 1999), *citing Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). On this issue, the Plaintiff filed a Motion for Summary Judgment, and in response, the Defendant also filed a Motion for Summary Judgment.[1]

■ The standard for a summary judgment motion is set forth in FED. R. CIV. P. 56, which is made applicable to this proceeding by Bankruptcy Rule 7056, and provides in pertinent part: A movant will prevail on a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In cases such as this, where the parties have filed cross-motions for summary judgment, a court must determine each party's compliance with the summary judgment standard separately as each motion must stand on its own merits. In this respect, the moving party bears the burden of demonstrating to the court that no genuine issues of material fact exist. *See Id.* at 322–23, 106 S.Ct. 2548. For the moving party who bears the burden of proof at trial, (i.e., the Plaintiff), this mean establishing that all the elements of that party's claim or cause of action are met. *Id.* at 331, 106 S.Ct. 2548. On the other hand, the moving party not bearing the burden of proof at trial (i.e., the Defendant) must either, (1) submit affirmative evidence that negates an essential element of the nonmoving party's claim, or, in the alternative, (2) demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Id.* at 331–332, 106 S.Ct. 2548. Thereafter, upon the moving party meeting its respective burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When making a determination as to whether a party has met their respective burden, all evidence and inferences drawn from the underlying facts must be viewed in a light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 586–588, 106 S.Ct. 1348.

In support of his assertion that he has complied with the above-stated standard for a summary judgment motion, the De-

---

**1.** In his Motion for Summary Judgment, the Defendant seeks damages under 11 U.S.C. § 523(d). This section provides that, "[i]f a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust."

fendant offered to the Court the following factual information, which, in part, was corroborated by the Defendant's affidavit:

-On September 5, 1997, the Defendant obtained a loan from the Plaintiff, in the amount of Twenty-five Thousand Ten dollars ($25,010.00), to purchase a 1998 Truck. In consideration therefor, the Plaintiff retained a security interest in this vehicle. Not long thereafter, the Defendant also obtained a loan of Ten Thousand dollars ($10,000.00) from the Plaintiff to purchase a 1998 "Polaris" snowmobile, which, like the Truck, was subject to a security interest as the result of the Plaintiff filing a UCC–1 Financing Statement.

-The Defendant intended to use the snowmobile during several trips to Michigan, but when those trips failed to materialize, the Defendant decided to sell the snowmobile. Before selling the snowmobile, however, the Defendant sought permission from a Mr. Kent Stanton who was, at that time, a loan officer for the Plaintiff. According, to the Defendant, Mr. Stanton responded affirmatively to the Defendant's inquiries even after informing him that the selling price would only be approximately Five Thousand Five Hundred dollars ($5,500.00).

-The Defendant eventually sold the snowmobile for Six Thousand dollars ($6,000.00). The proceeds of the sale were use by the Defendant to make a payment on both his loan obligations for the truck and snowmobile. In addition, the Plaintiff used the remaining Five Thousand dollars ($5,000.00) to make a lump-sum payment on the snowmobile.

-On January 14, 1998, the Defendant obtained another loan from the Plaintiff in order to consolidate the payments on all of his loan obligations with the Plaintiff. An additional security agreement was then executed. The property described in this security agreement included the snowmobile and the 1998 truck. At the time all the documents for this transaction were signed, the Defendant inquired to Mr. Stanton as to why the snowmobile was being listed as collateral, at which time Mr. Stanton responded by telling the Defendant that because the snowmobile was on the original note, and wasn't paid in full, it had to be carried over to the new agreement.

-The Defendant's truck was later sold and the proceeds were used to satisfy his obligation to the Plaintiff for the truck. Thereafter, as a result of this transaction, the Defendant obtained another consolidation loan with the Plaintiff at which time the snowmobile was listed as collateral, and again Mr. Stanton offered the same explanation as to why this was being done.

-All of the Defendant's financing statements with the Plaintiff were completed by Mr. Stanton.

-On April 9, 1998, the Defendant filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

The Plaintiff, although agreeing with some of the above facts, strongly contests the Defendant's recounting of events in a few certain areas. In particular, the Plaintiff strongly contests the assertion that Mr. Stanton, the former loan officer of the Plaintiff, ever discussed or approved the sale of the snowmobile by the Defendant. In support thereof, the Plaintiff offered to the Court the affidavit of Mr. Stanton who corroborated this assertion. Also with regards to this assertion, the Plaintiff argues that it would be absurd "to believe that within 3 months after loaning the defendant $10,000.00 to purchase a new Polaris snowmobile, as to which plaintiff secured itself with a U.C.C.–1 financing statement,

it [would] agree[ ] to allow the defendant to sell the secured collateral for approximately $6,000.00." (Plaintiff's Reply to the Defendant's Motion for Summary Judgment at pg. 2). In addition, the Plaintiff, in opposition to the Defendant's recounting of events, also argues that the Defendant's explanation for selling the snowmobile does not seem plausible. Specifically, the Plaintiff states:

> When one reviews defendant's reason for selling the snowmobile the defendant's reasoning sounds almost petulant. At his deposition, defendant testified: 'I was trying to sell it because I couldn't go on the trips I was supposed to ...' Defendant adduced no testimony from the purchaser or from 'the snowmobile shop' that either knew of the plaintiff's lien. A normal purchaser of a used vehicle would be concerned about buying something subject to a valid lien.

*Id.* at pg. 2–3. With respect to this argument, the Plaintiff points out that the Defendant sold the snowmobile by simply signing a piece of paper (i.e., no title was transferred), a fact which the Defendant does not contest. Finally, in opposition to the Defendant's Motion for Summary Judgment, the Plaintiff points out that because the snowmobile was sold without actually transferring its title, the Plaintiff had no way of knowing that its collateral had been sold, and as a result, when it consolidated its loans with the Defendant, it reasonably relied on the Defendant's materially false statement that he still owned/possessed the snowmobile.[2]

▮ The Court, after considering these assertions in light of the evidence presented, finds that the matters brought forth by the Plaintiff raise genuine issues of material fact concerning whether the Defendant violated the elements of § 523(a)(2)(B). In particular, it is the position of the Court that a genuine factual dispute exists as to whether, for purposes of § 523(a)(2)(B), the Plaintiff reasonably relied upon the Defendant's misstatements concerning his ownership/possession of the snowmobile, and whether the Defendant made his false statements regarding the snowmobile with the intent to deceive.[3] In this respect, the Court observes that for purposes of a summary judgment motion, a fact is material when its resolution would affect the outcome of the case, while a factual dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, as genuine issues of material fact exist in this case, the Court must find, under the standards set forth under Bankruptcy Rule 7056, that neither Party is entitled to judgment as a matter of law, and thus this case should proceed to Trial.

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment submitted by the Plaintiff, The Oakwood Deposit Bank, be, and is hereby, DENIED; and that the Motion for Summary Judgment submitted by the Defendant, Ricky Lee Porter, Jr., be, and is hereby, DENIED.

It is **FURTHER ORDERED** that this matter be, and is hereby, set for a Trial on Tuesday, December 19, 2000, at 1:30 P.M.,

---

**2.** It should be noted that although the Plaintiff filed a motion for summary judgment, its arguments in support thereof were essentially aimed at disputing the Defendant's entitlement to summary judgment.

**3.** The Defendant does not contest, pursuant to the first two elements of § 523(a)(2)(B), that his statements regarding the snowmobile were materially false, and represented his financial condition. (Defendant's Motion for Summary Judgment at pg. 4).

in Courtroom No. 1, Room 119, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio.

It is **FURTHER ORDERED** that on, or before Monday, December 11, 2000, the Parties exchange and file with the Court pre-trial memoranda, lists of witnesses, lists of exhibits, and stipulations.

It is **FURTHER ORDERED** that the failure to file any of the above items may result in the Trial being continued, witnesses or exhibits not being introduced into Trial, or sanctions being imposed by the Court.

